UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

BENJALEE W.,

                Plaintiff,

v.                                                            8:18-CV-1261
                                                            (TWD)
ANDREW SAUL,[1]

                Defendant.
───────────────────────────────────────

APPEARANCES:                                      OF COUNSEL:

SCHNEIDER & PALCSIK                  MARK A. SCHNEIDER, ESQ.
  *Counsel for Plaintiff*
57 Court Street
Plattsburgh, New York 12901

U.S. SOCIAL SECURITY ADMIN.        DANIEL STICE TARABELLI,
OFFICE OF GEN. COUNSEL             ESQ.
  *Counsel for Defendant*
15 Sudbury Street, Suite 625
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

      Currently before the Court, in this Social Security action filed by Benjalee W. ("Plaintiff") against Andrew Saul, the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11 and 13.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed and Plaintiff's Complaint is dismissed.

I.  **RELEVANT BACKGROUND**

Plaintiff applied for a period of disability and disability insurance benefits on September 24, 2015, alleging disability beginning April 24, 2015. (T. 39, 105-06, 218-21.[2]) Plaintiff's application was initially denied on February 12, 2016, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). (T. 105-38, 154-61.) He appeared at an administrative hearing before ALJ Asad M. Ba-Yunus on September 18, 2017. (T. 36-76.) On December 4, 2017, the ALJ issued a partially favorable written decision finding Plaintiff became disabled in 2017 on the day before his fifty-fifth birthday, based on Medical-Vocational Rule 202.06. (T. 9-35.) On October 15, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

In his decision, the ALJ found Plaintiff had severe impairments including chronic low back pain, hip pain, anxiety with panic attacks, depression, posttraumatic stress disorder ("PTSD"), heart murmur, Barrett's syndrome, and asthma. (T. 15-16.) However, he found Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 16-18.) Specifically, the ALJ considered Listings 1.04 (disorders of the spine), 3.02 (chronic respiratory disorders due to any cause except cystic fibrosis), 3.03 (asthma), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15

---

[2] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

(trauma- and stressor-related disorders). *Id*. Based on these impairments and the other evidence, the ALJ found, prior the onset date in 2017,[3] Plaintiff had the residual functional capacity ("RFC") to perform light work except he can

> only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, crawl and operate foot controls, but should not climb ladders or scaffolds, and no exposure to concentrated respiratory irritants. He is able to understand, remember and carry out simple instructions, perform simple work and make judgments on simple work-related decisions. Under supervision, he can occasionally understand, remember and carry out more complex instructions, perform more complex tasks and make judgments on more complex work-related decisions. He is capable of interacting with coworkers, supervisors and the public on a frequent, but not constant basis, and is capable of tolerating frequent changes in the work setting.

(T. 18.) Given his RFC, the ALJ found there were jobs existing in significant numbers in the national economy Plaintiff could perform, but beginning on the onset date, there were no jobs existing in significant numbers in the national economy Plaintiff could perform. (T. 27-29.) The ALJ therefore concluded Plaintiff was not disabled prior to the onset date in 2017, but then became disabled through the date of the decision. (T. 29.)

In the present appeal, Plaintiff argues the ALJ erred in weighing the opinion evidence and contends his combination of a spinal impairment, pain, and a mental health impairment render him disabled. (Dkt. No. 11 at 22-34.) He further asserts he is disabled under the Medical-Vocational Rules ("Grids") 201.12 and 201.14. *Id*. at 34. Finally, Plaintiff contends the ALJ failed to credit his testimony. *Id*. at 34-42. Defendant argues substantial evidence supports the ALJ's decision in all respects. (Dkt. No. 13 at 6-24.)

---

[3] The Court has not included the exact date of onset in this Decision and Order for confidentiality reasons because the ALJ's analysis indicates it is one day before Plaintiff's fifty-fifth birthday and represents a change in age category. (T. 26-27.)

## II. DISCUSSION

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B. Standard for Benefits[4]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

---

[4] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### C. ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

Plaintiff contends the ALJ erred by not giving sufficient weight to the opinions of his treating sources Dr. Wolczynski, Joseph Arguelles, M.D., and Dr. Trutia and the Agency's own examining consultant Dr. Wassef. (Dkt. No. 11 at 22-29.) He also argues the ALJ did not state what weight was given to the findings and opinions of doctors at Champlain Spine and Pain Management and the ALJ erred in giving too much weight to the opinion of consultative examiner Dr. Mount. *Id*. at 28.

The Second Circuit has long recognized the treating physician rule set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Here, the ALJ's analysis reflects a full consideration of the various opinions including any inconsistencies therein. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) (same); *Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("'Although [an] ALJ's

conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)); *West v. Comm'r of Soc. Sec.*, 15-CV-1042 (GTS/WBC), 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016), *Report and Recommendation adopted by* 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016) (citing *Matta*, 508 F. App'x at 56); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

To that end, the ALJ afforded some weight to Dr. Wassef's opinion as the RFC included limitation in exposure to concentrated respiratory irritants, but the ALJ indicated he did not accept Dr. Wassef's limitations pertaining to Plaintiff's low back pain or marked limitations because Plaintiff had back surgery in December 2015, and was only a month and a half post-surgery at the time of the examination. (T. 25.) The ALJ therefore afforded little weight to Dr. Wassef's opinion regarding Plaintiff's back pain and purported limitations. *Id*.

With respect to Dr. Wolcynski, the ALJ indicated he did not specifically cite the studies he referenced in his opinion; he did not provide a rationale to support each limitation; and he did not indicate the relevant timeframe. (T. 25-26.) The ALJ therefore afforded this opinion minimal or little weight for the following reasons: (a) Dr. Wolczynski "merely completed a form and for the most part circled his answers" making it "unclear how he reached his conclusions because he gave no examples of objective findings pertaining to the tests/documents he was referencing, and he does not provide the objective medical evidence to support his conclusions"; (b) his contemporaneous treatment notes did not support the degree of limitations; (c) his opinion was without substantial support from the other evidence of record; and (d) he "essentially stated

an opinion on an issue exclusively reserved to the Commissioner" when he indicated Plaintiff would miss more than three days of work per month. (T. 26.)

The ALJ afforded little weight to Dr. Trutia's assessment because it was largely based on Plaintiff's self-reports and not on any clinical observations or diagnostic testing and the evidence of record (including Dr. Trutia's treatment notes) did not support marked or extreme mental limitations. (T. 26.) The ALJ also noted Dr. Trutia mostly "circled her answers and did not provide a rationale to support her conclusion(s)." *Id.*

While Plaintiff argues the ALJ erroneously dismissed the opinion of treating physician Dr. Arguelles and did not state what weight was given to the findings and opinions of doctors at Champlain Spine and Pain Management, Plaintiff neither argues with specificity what such opinions and/or findings were nor offers citation to the record explaining to which statements he is referring. (Dkt. No. 11 at 28.) In his summary of the medical evidence, Plaintiff places emphasis on Dr. Arguelles' indication that he believed it would be potentially in Plaintiff's best interest to seek long-term disability. (Dkt. No. 11 at 9; T. 397-98.) However, Plaintiff offers no other argument regarding this opinion other than to summarily state the ALJ dismissed an opinion from Dr. Arguelles. (Dkt. No. 11 at 28.) As Defendant points outs, such an opinion from Dr. Arguelles was on an issue reserved to the Commissioner and was therefore not entitled to any weight, thus the ALJ's failure to explicitly weigh it was harmless. (Dkt. No. 13 at 14.) *See Mortise v. Astrue,* 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010) ("[A]n opinion concerning the ultimate issue of disability, from any source, is reserved to the commissioner."); *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 267 (N.D.N.Y. 2013).

Thus, the Court finds the ALJ appropriately considered the medical opinions in the record, including from Plaintiff's treating physicians, and adequately described the reasons he

9

assigned each a specific weight. Under these circumstances, the ALJ's decision is entitled to deference. *See Bliss*, 2015 WL 457643, at *7.

Arguing in the alternative, Plaintiff maintains "the ALJ had an obligation to contact the treating sources to ask for more information if he was not satisfied with the medical bases for their opinions." *Id.* at 29. However, there is no obligation to re-contact a treating physician where the evidence of record is "adequate to permit the ALJ to make a disability determination." *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010) (citing *Perez v. Chater*, 77 F.3d 41, 47-48 (2d Cir. 1996)); *see also* 20 C.F.R. §§ 404.1520b, 416.920b (indicating that the Commissioner may re-contact a treating physician "[i]f the evidence is consistent, but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled"). The ALJ's decision does not indicate he did not have sufficient evidence to determine whether Plaintiff was disabled and his reasonable explanations that the treating source opinions were not supported by the evidence of record did not require him to recontact those sources for further information. (T. 25-26.)

Plaintiff further asserts he is disabled by the combination of his spinal impairment, pain and mental health impairment and he does not have the RFC to perform any work. (Dkt. No. 11 at 29-34.) The Court's review of the record does not support these arguments or that the ALJ failed to properly consider Plaintiff's impairments in combination. As Defendant maintains, the ALJ properly considered Plaintiff's impairments (including his spinal impairment, pain, and mental impairment) in combination throughout the sequential evaluation. (Dkt. No. 13 at 23-24; T. 15-29.) Indeed, the ALJ found Plaintiff's chronic low back pain, neck pain, anxiety with panic attacks, depression, and PTSD were severe impairments at Step Two and properly considered these impairments at subsequent steps. (T. 15-16.) The ALJ limited Plaintiff to a

10

modified range of light work and considered his allegations of disability due to chronic physical pain and mental health limitations. (T. 18-26.) The ALJ subsequently concluded "[b]ased on the record as a whole, including all the claimant's severe impairments, both singly and in combination, and consistent with the notes, findings, and opinions of [his] treating physician and other non-treating physicians" he retained ability to perform work activities consistent with the RFC determination. (T. 25-26.)

Finally, Plaintiff argues the ALJ failed to include his mental limitations in the RFC and he is only capable of interacting with coworkers, supervisors, and the public on an occasional basis. However, the Court finds Plaintiff has not established further mental limitations than those included in the RFC, or that he can only occasionally interact with coworkers, supervisors, and the public. (Dkt. No. 11 at 34.) RFC is

> what an individual can still do despite his or her limitations. . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

Here, Plaintiff testified he has panic attacks when he is in large groups of people or "a large space that had rows and rows of just either groceries or products." (T. 51-52.) The ALJ indicated Plaintiff had a moderate limitation in interacting with others before the established onset date and explained Plaintiff's treatment notes did "not reference significant limitations in interaction as evidenced by his ability to go out when required to attend medical appointments." (T. 17.) The ALJ pointed to a function report in which Plaintiff "stated he gets along with all types of authority figures, such as police, bosses, landlords or teachers and he has never been

11

fired or laid off from a job because of problems getting along with other people." (T. 17, 263.) The ALJ also noted Plaintiff exhibited "few significant social deficits when interacting with treating and examining sources" and was "capable of effectively conveying information in a socially appropriate manner with no evidence of communicative deficits." (T. 17.) The ALJ subsequently limited Plaintiff to frequent but not constant interaction with coworkers, supervisors, and the public. (T. 18.) This is consistent with Dr. Mount's indication that Plaintiff had mild limitation relating adequately with others as well as Dr. Ochoa's assessment[5] that Plaintiff "would benefit from an environment where he is precluded from intensive interaction with the public, but is capable of brief superficial encounters." (T. 119, 135, 514.)

For the reasons above, the Court finds substantial evidence supports the ALJ's analysis of the opinion evidence and his conclusion regarding Plaintiff's RFC.

### D. The ALJ's Evaluation of Plaintiff's Symptoms Including Pain

In evaluating a claimant's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20

---

[5] The ALJ incorrectly indicated Dr. Ochoa was a single decision maker and did not evaluate this opinion, but the Court finds this to be harmless error where, as here, consideration of the opinion would not have changed the outcome of the ALJ's decision. *See Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, 14-CV-0578 (MAD/ATB), 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying the request for remand because application of the correct legal standard would not change the outcome).

C.F.R. § 404.1529(c)(3); SSR 16-3p)). SSR 16-3p provides that the evaluation of symptoms involves a two-step process.[6] 2017 WL 5180304, at *2. The Social Security Administration ("SSA") "will first consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id*. at *3. "[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the SSA will then] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." *Id*. If SSA cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, it will "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id*. at *6.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, factors to be considered include: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *7-8.

---

[6] The Court notes the standard for evaluating subjective symptoms has not changed in the regulations. Rather, use of the term "credibility" has been eliminated and SSR 16-3p makes it clear the subjective symptom evaluation is not an evaluation of the claimant's character. 2017 WL 5180304. SSR 16-3p is applicable on March 28, 2016, pre-dating the ALJ's December 2017 decision. *Id*.

Here, Plaintiff contends the ALJ erred by not crediting his testimony which Plaintiff maintains was supported by the medical evidence. (Dkt. No. 11 at 34-42.) Plaintiff argues the MRIs and clinical examinations by treating providers and Dr. Wassef establish he is suffering from severe pain. *Id*. at 37. Plaintiff asserts the "ALJ cited some minor perceived inconsistencies in [Plaintiff's] testimony. However, he did not give [him] an opportunity to explain the small differences." *Id*. at 42. Plaintiff also argues the ALJ did not note any substantive inconsistencies in Plaintiff's testimony or provide any medical evidence contradicting his testimony. *Id*. The Court does not find these arguments persuasive.

Notably, the ALJ accepted Plaintiff had pain and some limitations, but found they were not as extreme as alleged. (T. 24.) The ALJ pointed out Plaintiff indicated fairly restrictive activities of daily living to the consultative examiners Dr. Wassef and Dr. Mount, but the evidence of record did not contain significant references to his limitations regarding activities of daily living. (T. 24, 501-18.) Indeed, as the ALJ noted, Dr. Arguelles advised Plaintiff to cut back on his activities following his back surgery in December 2015. (T. 24, 466-67.) The ALJ also noted Plaintiff reported using a walker after having injections in his back, but there was no mention in the record of him using a walker after injections or surgery and there was no evidence a treating source recommended using a walker. (T. 24, 262.) The Court finds the ALJ reasonably concluded "these inconsistent statements weaken the suggestion that [Plaintiff's] purported inability to work is attributed to the limiting effects of his impairments." (T. 24.)

Although Plaintiff argues the ALJ did not give him an opportunity to explain small differences in his testimony and did not provide any substantive inconsistencies in Plaintiff's testimony or any medical evidence contradicting his testimony, the Court's review indicates the ALJ carefully considered Plaintiff's allegations in conjunction with the other evidence of record.

14

(T. 15-29, 36-76, 256-69, 501-18.) As argued by Defendant, the ALJ's decision included a lengthy discussion of the medical evidence indicating Plaintiff's allegations were inconsistent with such medical evidence and he was not required to give Plaintiff subsequent opportunities to "explain" inconsistencies in his subjective complaints. (Dkt. No. 13 at 21-23.) The ALJ properly considered the evidence before him and the Court will not now reweigh evidence. *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016), *Report and Recommendations adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993); *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (internal citations omitted).

In sum, substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms.

### E.  The ALJ's Step Five Determination

The burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. July 7, 2009) (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

15

In this case, at Step Five, the ALJ relied on vocational expert ("VE") testimony in finding, prior to the established onset of disability, Plaintiff could perform jobs existing in significant numbers in the national economy including production assembler, parking lot attendant, and locker room attendant. (T. 27-28, 65-68.) At the administrative hearing, the ALJ asked the VE a hypothetical question mirroring the RFC limitations for a modified range of light work. (T. 18, 65-67.)

Plaintiff argues he is disabled under the Medical-Vocational Rules 201.12 and 201.14 as a high school graduate (whose education does not provide for direct entry into skilled work) limited to sedentary work. (Dkt. No. 11 at 34.) As indicated before in this Decision and Order, the Court finds substantial evidence supports the ALJ's analysis of the opinion evidence and Plaintiff's RFC, impairments, and symptoms. Plaintiff's arguments regarding disability based on a sedentary RFC are therefore not persuasive and remand is not required.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED**.

Dated: March 3, 2020
Syracuse, New York

_(signature)_
Thérèse Wiley Dancks
United States Magistrate Judge